UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                              Case No. 15-20652-04

v.

                              HON. GEORGE CARAM STEEH

COREY BAILEY (D-4),

        Defendant.
_____/

ORDER DENYING DEFENDANT'S MOTION FOR A *DAUBERT*
HEARING AND TO PRECLUDE TESTIMONY OF GOVERNMENT'S
PROPOSED EXPERT CELLULAR ANALYSIS [DOC. 774]

This matter is before the court on defendant Corey Bailey's motion for a *Daubert* hearing and to preclude testimony of government's proposed expert cellular analysis. The motion is joined in by defendants Arlandis Shy [doc. 797], Billy Arnold [doc. 780] and James Robinson [doc. 804]. The motion has been briefed and a response was filed by the government. The court also had the opportunity to hear the testimony of the government's cellular analysis expert, FBI Special Agent Joseph Jensen, who was permitted to testify during the first trial held in this case. The court does not believe oral argument would further aid its determination of this matter.

The government disclosed that it will seek to introduce expert testimony of Agent Jensen regarding an analysis of cellular telephone business records from various telephone numbers associated with certain defendants (Arnold, Bailey, Porter, Brown, Robinson). Agent Jensen authored a report entitled "FBI Cellular Analysis Survey Team" including seven target cell phone numbers and their activity at certain times on July 14, 2014, May 1, 2015, May 8, 2015, May 10, 2015, May 24, 2015 and June 7, 2015. These dates and times correspond with some of the murders/shootings which form the basis for the charges in this case.

Jensen will testify that he has received training both by the FBI and the major cellular providers as to how to interpret and map the location information provided by the phone companies as part of their business records. He will testify that during a call, a cellular phone connects to the cell tower with the strongest and clearest signal, and that it is possible to learn the general location of a cell phone as it is used to make and receive calls. Jensen will explain that he was given dates and times of various incidents in this case and that he compared that information with the cell phone records. Jensen will testify that based on his analysis, he was able to determine that the cell phones in question utilized cell towers in proximity to the various crime scenes. Jensen will show the jury maps depicting a

particular phone making or receiving a communication at a specific time and utilizing a particular cell tower and sector, as represented by pie-shaped symbols on the maps. The pie-shapes represent the direction the antennas on the cell towers were oriented at the time of the communication. The shaded areas show the primary direction the radio frequencies (RF) travel from antennas - they indicate the general area where the cell phone was located at the time of the communication and do not depict the actual RF coverage area of the particular sector. Jensen will explain that he cannot testify about a defendant or cell phone's precise location using this method of analysis.

Defendants argue that the proposed expert opinion testimony does not meet the requirements of FRE 702 and 403. Federal Rule of Evidence 702 provides that a witness who is qualified as an expert may testify in the form of an opinion when:

> (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case.

FRE 702. To assess the reliability of an expert's methodology, the Supreme Court has set out four factors to consider: (1) whether the theory is based on scientific or other specialized knowledge that has been or can

be tested; (2) whether the theory has been subjected to peer review; (3) the known or potential rate of error and the existence of standards controlling the theory's operation; and (4) the extent to which the theory is generally accepted in the relevant community. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 593-94 (1993).

The Sixth Circuit has held that a district court is not required to hold a hearing to comply with *Daubert* so long as it "keeps watch over the proceedings, and, with the aid of objections from [counsel] eliminates methodologically unsound or irrelevant expert testimony." *Avery Dennison Corp. v. Four Pillars Enterprise Co.*, 45 F. App'x 479, 484 (6th Cir. 2002). This court presided over the first trial in this case in which Agent Jensen was permitted to testify about the exact methodology at issue in defendant's motion. The court is satisfied that a *Daubert* hearing is not required to determine the reliability of Agent Jensen's methodology.

A. <u>Jensen possesses specialized knowledge</u>

Special Agent Jensen has been an FBI agent for over seven years. In 2014 he received 40 hours of training from the FBI's Cellular Analysis Survey Team ("CAST") in basic cellular telephone call detail analysis. Over the course of the past year, Jensen received 260 hours of training in advanced analysis of cellular record analysis, cellular theory, RF

technology and propagation, cellular network architecture, and cellular technologies. In 2016 Jensen completed CAST certification training. Jensen has testified as an expert in cellular telephone call detail analysis in this district, including in the first trial in this case. *United States v. Gomez*, 15-20087 (J. Michelson); *United States v. Brownlee*, 16-20319 (J. Cleland); *United States v. Woodley et al.*, 15-20007 (J. Michelson); *United States v. Dupree*, 15-20457 (J. Leitman); *United States v. Wiggins*, 16-20644 (J. Murphy). He has also been recognized as an expert in Wayne and Monroe County Circuit Courts.

The court finds that based on his experience and training, Jensen possesses an expertise in cellular analysis.

B. Cell-Site location data is widely recognized and admitted

General cell location evidence has passed *Daubert* analysis in multiple federal courts. *United States v. Pembrook*, 876 F.3d 812, 824-25 (6th Cir. 2017). Jensen will testify that cellular phone business records, provided by service providers, reveal which cell tower and sector a cell phone utilized at a given moment. He will also testify that a typical cell tower has three 120-degree antennas (or "sectors"). Jensen will testify that a cell phone will seek the tower with the strongest, clearest signal when it requests and connects with a communication channel on the network. He

will testify that the strongest, clearest signal generally comes from the tower that is closest to the phone or the tower with the best line of sight.

Jensen will concede that the strongest, clearest signal can be affected by a number of factors including signal strength, weather, maintenance schedules of certain cellular towers, topography, and man-made structures. See *United States v. Freeman,* 2015 WL 2062754, at *5 (E.D. Mich. May 4, 2015) ("[t]he fact that an expert did not take into account various factors that may affect the signal strength of a tower or impact its coverage range does not render the fundamental methodology of cell site analysis unreliable. Instead, the absence of those considerations goes to the weight of the testimony rather than its admissibility, and those considerations can be addressed through vigorous cross-examination").

With these principles in mind, Jensen has produced a report mapping the cell towers and antennas used by the various phones on the dates of relevance in this case. In particular, the cell-site data shows all of these cellular phones interacted with cellular towers in the *general* locations prior to, during, and/or after the incidents on the relevant dates. Jensen will refer to phone numbers and not to defendants associated with the phone number. He will not speculate as to who was in possession of a phone at the time a call was made.

The court concludes that using call records and cell tower data to determine the general location of a cell phone at a specific time is an accepted methodology. Furthermore, having an expert interpret the cell site evidence and map the data is helpful to the fact-finder.

Now, therefore,

For the foregoing reasons, defendant Bailey's motion for a *Daubert* hearing and to preclude testimony of government's proposed expert cellular analysis is DENIED.

IT IS SO ORDERED.

Dated: March 26, 2018

                                       s/George Caram Steeh
                                       GEORGE CARAM STEEH
                                       UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 26, 2018, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk