UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
MICHIGAN SOUTHERN DIVISION

**UNITED STATES OF AMERICA**,

    Plaintiff,

-vs-

**COREY BAILEY (D-4),**

    Defendant.

File No. **15-20652**

Hon. **George Caram Steeh**

MOTION AND INCORPORATED MEMORANDUM OF LAW FOR
JUDGMENT OF ACQUITTAL PURSUANT TO FRCRP RULE 29(A)

**I.      INTRODUCTION** [1]

Defendant Corey Bailey, through his attorneys Craig Daly and Keith Spielfogel, asks for acquittal on Counts One - RICO Conspiracy under 18 U.S.C. 1962(d); Count Four - Murder in Aid of Racketeering under 18 U.S.C. 1959 (a) and (2); Count Five -Use of Firearm in Furtherance of a Crime of Violence Causing Death under 18 U.S.C. 924(c) and 924 (j) and (2); Counts Six through Eight- Attempt Murder in Aid of Racketeering under 18 U.S.C. 1959(a)(5) and (2); Counts Nine through Eleven- Assault with a Dangerous Weapon in Aid of Racketeering under 18 U.S.C. 1959(a)(3) and (2); Count Twelve- Use and Carry of a Firearm During, and in Relation to, a Crime of Violence- under 18 U.S.C. 924(c) and (2) and; Count Thirty-Two- Possession of a Firearm in Furtherance of a Crime of Violence. The basis for this motion is predicated on the Government's complete failure to establish at trial a necessary element in each of these charges ---*the existence of an enterprise*.

---

[1] In the preparation of this motion counsel for Bailey made extensive use of the research and writing set forth in the Rule 29 Motion filed by counsel for Alexandra Norwood in *United States v. Norwood*, 12:20287.

1

The Supreme Court case of *Boyle v. United States,* 556 US 938 (2009), allows a finding of a racketeering enterprise structure merely from the acts which may comprise a pattern of racketeering activity. However, even under *Boyle,* evidence of a certain amount of organizational structure is still required. *Ouwinga v. Benistar 419 Plan Services, Inc.*, 694 F3d 783 (6th Cir. 2012). The government is required to establish that the alleged enterprise (1) was an ongoing organization with some sort of framework or superstructure for making and carrying out decisions, (2) that the members of the enterprise functioned as a continuing unit with established duties and (3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged. *Ouwinga* at 793. The Government's evidence does not meet that standard, even when viewed under the deferential rules the court is required to use in considering this motion.

This failure of proof is evident in the lack of evidence to connect the numerous alleged state offenses to the Count One racketeering enterprise allegation; and it is evident in the failure of proof to establish the required connection of that racketeering enterprise to interstate commerce. "Recent precedent in the Supreme court and the Sixth Circuit emphasize that the prosecution and punishment for these crimes must be undertaken by the States, however, and that the federal government exceeds its jurisdiction when it steps in this manner into the arena of local non-economic violent crime." *United States v. Garcia,* 143 F Supp 2d 791, 817 (ED Mich. 2000) (Edmunds, N.). This lack of evidence is reason to conclude that the Government has failed to present sufficient evidence to permit these counts to be submitted to the jury.

## II. STATEMENT OF FACTS

### A. The Indictment

The Sixth Superseding Indictment charged the defendant with the Counts listed above.

#### 1. COUNT ONE: RACKETEERING CONSPIRACY

Count One charges that a conspiracy in violation of 18 USC §1962(d) began in about 2003 and continued until the date of the indictment, January 3, 2018. It charges that all five defendants on trial in this case, along with fifteen other defendants, agreed that "a coconspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the racketeering enterprise." (¶11). The overt acts allege drug offenses, murder, gun and other offenses attributed to various defendants, including defendants not on trial, during a time period between September 9, 2003 through September 1, 2017. Defendant Bailey was named in the following Paragraphs of Count One:

- 42 – July 28, 2014, with appearing in a rap video on YouTube.
- 43 - July 22, 2014, with possession of a loaded handgun and of a loaded SKS rifle.
- 44-45 – July 14, 2014, shooting at a car causing the death of one occupant and the shooting of another person in the chest.
- 61 – August 18, 2012, arrest in Detroit with crack cocaine and heroin.
- 65-66 – February 8, 2012, arrest in Charleston, West Virginia, with $2,930 and 53 oxymorphone pills. Also with providing false identification to law enforcement.
- 71-72 – November 6, 2009, arrest in Charleston, West Virginia, with tossing two bags of marijuana and approximately 53 Xanax pills, and

> cocaine to the ground. Also with providing false identification to law enforcement.

- 73-74- October 27, 2009, with being in Charleston, West Virginia and with providing false identification to law enforcement.
- 75- October 21, 2009, with the killing of R.C. No evidence was presented on this alleged overt act at trial.
- 95- April 13, 2007, arrest in Detroit with Crack, marijuana, and a shotgun.
- 100- March 31, 2006, with making threats to residents in Detroit. No evidence was presented on this alleged overt act at trial.
- 102 – May 5, 2005, with being at 14518 Manning St, Detroit where marijuana, cocaine packaging material and money were located. No evidence was presented on this alleged overt act at trial.
- 104 – July 23, 2004, with being arrested wit marijuana. No evidence was presented on this alleged overt act at trial.

## III. ARGUMENT

### A. LEGAL STANDARD

It is beyond dispute that "[a] defendant bears a heavy burden in a sufficiency of the evidence challenge." *United States v. Davis,* 577 F.3d 660 (6th Cir. 2009). The court must "view the evidence in the light most favorable to the government and draw all reasonable inferences in the government's favor." *United States v. Gibson*, 675 F2d 825, 829 (6th Cir. 1982). The court then "must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a

4

reasonable doubt. *United States v. Curley*, 160 F2d 229, 232-34 (DC Cir. 1947); *Jackson v. Virginia*, 443 US 307, 319 (1979).

A motion for judgment of acquittal must be granted if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt. *United States v. Fawaz*, 881 F2d 259, 261 (6th Cir. 1989).

    **B.**     **REASONS WHY THIS COURT SHOULD GRANT ACQUITTAL ON RICO CONSPIRACY (COUNT ONE) AND VICAR (COUNTS FOUR, SIX, SEVEN, EIGHT, NINE, TEN AND ELEVEN).**

        **1.**     **THERE HAS BEEN A FAILURE OF PROOF OF THE RACKETEERING ENTERPRISE AS ALLEGED.**

The existence of the racketeering enterprise is a required element of the RICO conspiracy offense charged in Count One.

> RICO makes it "unlawful for a person employed by or associated with any racketeering enterprise engaged in, or the activities of which affect, interstate of foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such racketeering enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. "
> 18 U.S.C. § 1962(c).[2]

An association - in - fact racketeering enterprise, as alleged in the present indictment must be "a continuing unit that functions with a common purpose. *United States v. Turkette*, 452 U.S. 576 (1981). According to *Boyle*, it must have at least three structural features: "a purpose, relationships among those associated with the racketeering enterprise, and longevity sufficient to permit these associates to pursue the racketeering enterprises' purpose." 556 U.S. at 946. It is also required that there must be evidence that the alleged structure exists as a separate element. *Id* at 947. In *Boyle*, the

---

[2] 1962 (d) makes it a violation to conspire to violate subsections (a), (b), or (c) of the statute.

5

Court made clear that its holding in *Turkette,* 452 U.S., at 583, that "the existence of a racketeering enterprise is an element distinct from the pattern of racketeering activity and 'proof of one does not necessarily establish the other,'" is still the law. 556 U.S. 947. More recently, in *Ouwinga v. Benistar 419 Plan Services, Inc.* 694 F.3d 783, 794 (6th Cir. 2012) the Court explained that an association - in- fact racketeering enterprise "require[s] a certain amount of organizational structure which eliminates simple conspiracies from the Act's reach. *VanDenBroeck v. CommonPoint Mortg. Co.,* 210 F.3d 696. 699 (6th Cir. 2000)."

The evidence was insufficient to meet these standards.

First, while the indictment alleges the racketeering enterprise had four purposes, (1) Maximizing profits for enterprise members from a variety of illegal activities, (2) preserving and protecting the power, territory, and profits of the enterprise through the use of intimidation and violence, including assaults and threats of violence, (3) promoting and enhancing the enterprise and its members' and associates' activities, and (4) keeping victims in fear of the enterprise and in fear of its members and associates through threats of violence and violence, the evidence at trial actually refuted these allegations.

The three government cooperators who testified (Derrick Kennedy, Mathleah Scott and Anthony Lovejoy) each made it abundantly clear that the Seven Mile Bloods lacked even the most rudimentary structure required to come within the meaning of an enterprise under Section 1962. They established that there was no maximizing of profits for members as each member was totally on his own as to whether he made money or not. The cooperators, and other witnesses, did not establish the purpose of protecting and preserving power, territory and profits through the use of intimidation and violence nor

did they establish the promotion and enhancement of the non-existing enterprise.

Derrick Kennedy testified that he never needed permission from the SMBs to sell drugs. He sold them as part of his own hustle. Whatever money he made was his own money. He didn't need to give any of it to the SMBs. There was no boss from a gang, Seven Mile Bloods or 55 telling him what to do and how to run his own personal business. He did whatever he wanted to do with his money. He did not sell drugs in the Red Zone to advance the SMBs or any organization or enterprise. He sold drugs in West Virginia in order to make more money. When he gave money to other people or put money on the books for people in jail he did so because they were his friends and he didn't care if they were SMBs or not.

Kennedy testified he didn't look at 55 as a gang and that it wasn't like an organization or an enterprise. He stated no one called themselves a leader of the SMBs and that the SMBs did not have regular meetings, pay dues, have beat-in initiations. He stated no one in SMB could require others to "put in work" to bring back money to the SMBs. The SMBs had no rules, regulations or codes. The SMBs didn't beat you up if you violated a rule. He testified the lack of all of these factors distinguished SMB from a gang. (Transcript: July 27, 2018, pages 89-107).

Anthony Lovejoy echoed many of the same facts testified to by Derrick Kennedy on the question of the existence of an enterprise. He testified over and over that he was on his own hustle and was not obligated to SMB for anything of a financial nature. He stated there was no initiation into SMB, no meetings, no roll calls, no pledges, no rules and regulations. All the members were on the streets selling drugs, getting the drugs from different sources and pocketing the money they made for themselves. Money he gave for

bail to others, he did so out of friendship not obligation. (Transcript, June 27, 2018, pgs.52-76).

Mathleah Scott told how Devon McClure sold drugs for himself and did not have to share any of the proceeds with the SMB, didn't need permission to go to West Virginia to sell drugs, and got his drugs from whoever gave him the best deal whether that was an SMB or not. (Transcripts July 16, 2018, pgs. 31-33.)

A review of the overt acts that the government produced evidence on during trial corroborates the independent (as opposed to concerted, organized) nature of Corey Bailey's drug activities as testified to by Kennedy, Lovejoy and Scott. He is arrested several times with drugs that are in no way connected to any greater purpose other than to make money for himself. (See overt acts 43- arrested with loaded handgun. A rifle was located in a disabled vehicle present in the driveway of a home where the defendant did not live. He was never seen in possession of the rifle; 61- arrested in Detroit with packets of cocaine and heroin; 65- arrested in West Virginia with oxymorphone pills; 71- arrested after discarding marijuana, Xanax pills and cocaine; 73-not arrested after person in car admits the small amount of marijuana was his; 94-small amount of cocaine; 95- arrested with small amount of crack and marijuana and a gun). In none of these instances was there testimony that any of these acts were to further an organization or enterprise. The government proved through its own witnesses that there were numerous persons, defendants and non-defendants, engaged in multiple independent, unrelated incidents occurring over a fifteen year period.

Simply put, the evidence established the SMBs were a group of individuals who grew up in a certain area in Detroit, knew each other from the streets, hung out with

whoever they wanted to be with and hustled for themselves. They provided no economic function for anyone other than themselves.

Even under the reduced standard to be applied on a Rule 29 motion, the government did not prove the existence of a framework or superstructure for making and carrying out decisions. In fact the government established the exact opposite. It did not prove that members had established duties. The evidence clearly established that they did not. Finally, it did not prove that the enterprise existed separate and distinct from the pattern of racketeering. It is required to prove all three of these elements. It proved none.

**2. THERE IS A FAILURE OF PROOF ON COUNT FOUR AS TO (1) A NECESSARY RELATIONSHIP OF ALLEGED ACTS OF RACKETEERING ACTIVITY AND THE RACKETEERING ENTERPRISE AND (2) THAT THE MURDER WAS COMMITTED FOR THE PURPOSE OF MAINTAINING AND INCREASING COREY BAILEY'S POSITION IN THE SMB.**

It is also required under Section 1959 (a) that alleged racketeering acts must be related to the illegal purpose of the racketeering enterprise. *United States v. Corrado*, 227 F.3d 543, 554 (6th Cir. 2000); *Sedima S.P.R.L. v. Imrex* 473 U.S. 479, 496 (1985). That is, the defendant must be enabled to commit the racketeering acts solely by virtue of his relationship to the racketeering enterprise or because the offense was related to the activities of the racketeering enterprise. *United States v. Lawson,* 535 F.3d 434 (6th Cir. 2008). Courts have interpreted these requirements to mean that a defendant must use "a racketeering enterprise to engage in a pattern of racketeering activity." *Jay E. Hayden Foundation v. First Neighbor Bank, N.A.* 610 f.3d 382, 388-389 (7th Cir. 2010) (*cited at*: *United States v. Norwood*, 2013 WL 5965328, p. 6).

In addition to the "Enabling" requirement, the government must prove that the defendant's "general purpose" in shooting the named victim "was to maintain or

9

increase his position in the racketeering enterprise." *United States v. Thai*, 29 F3d 785, 817 (2nd Cir. 1994). Put another way, can the jury reasonably conclude that the defendant committed the violent crime because "he knew it was expected of him by reason of his membership in the racketeering enterprise or that he committed it in furtherance of that membership." *Id.*

While the commission of a violent act may not have been the defendant's sole or principal motive, the evidence must support an inference that "the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the racketeering enterprise or that he committed it in furtherance of that membership." *Concepcion, supra*, at 381. That is, the violent act must have been committed "as an integral aspect of membership in the racketeering enterprise." *United States v. Thai*, 29 F3d 785, 817 (2nd Cir. 1994).

The purpose element of VICAR does not require the defendant to be *solely* motivated by a desire to increase his status within the organization, but a defendant's purpose must be more than merely incidental. In *United States v. Banks*, 514 F.3d 959, 969-970 (9th Cir. 2008), the Court explained:

> [A]lthough the law does not require that the defendant's gang-related purpose be his primary or sole purpose, it does require that his purpose be more than merely incidental: It must be within his "general" purpose, or, in the alternative, the violence committed must be in some way "integral" to the defendant's membership in the gang.
>
> Although we think the question is a close one, we conclude that the instructions given by the district court here were erroneous because they permitted the jury to convict Banks on the VICAR counts even if it found that his battle with Gilmore was generally motivated by personal animosity and by a desire to regain the respect and affection of his girlfriend, so long as the jury also found some incidental purpose to maintain his position in the gang. By permitting the jury to find only that Banks's desire to maintain or enhance his status in the gang was

> "one of" or "at least one of" his purposes or "at least in part" due to his membership in the gang, the district court ran the risk that the jury would focus not on Banks's general purpose in committing these crimes and its relationship to his status in the gang, but merely on his status as a gang member. Given that status, the jury could easily infer that he acted "at least in part" to enhance his membership and status within the gang.
>
> We are persuaded that VICAR requires more than this. People often act with mixed motives, so the gang or racketeering enterprise purpose does not have to be the only purpose or the main purpose of the murder or assault. But it does have to be a substantial purpose. Murder while a gang member is not necessarily a murder for the purpose of maintaining or increasing position in a gang, even if it would have the effect of maintaining or increasing position in a gang. ***By limiting the statute's scope to those cases in which the jury finds that one of the defendant's general purposes or dominant purposes was to enhance his status or that the violent act was committed "as an integral aspect" of gang membership, we ensure that the statute is given its full scope, without allowing it to be used to turn every criminal act by a gang member into a federal crime***. (Emphasis added.)

The evidence adduced at trial regarding the shooting of Djuan Page and Michael Davis on July 14, 2014, that form the basis for Counts 5, 6, 7,8,9,10 and 11, revealed that Billy Arnold had a personal feud going back at least seven or eight years prior to July 14, 2014, with Michael Davis and his twin, Martez. He held them responsible for having gone to prison for that period of time. When he was released from prison he had not gotten over his grudge against them and the group they associated with, the Hustle Boys, even though things between the groups had long since calmed down.

In May of 2014, Arnold saw the twins at the Somerset Mall in Troy. Arnold became enraged at their sight and threatened to kill the Davis brothers despite Martez Davis' statements that the beef was old news indicating to let it go. However, it was only after cooperator Derrick Kennedy convinced him that he could not kill them at

11

the mall and make a successful escape that Arnold was persuaded to forego attempting to do so.

On July 14, 2014, Arnold again saw the Davis brothers when he went to report to his parole officer. Coincidentally, the Davis twins were at the parole office at the same time meeting with their parole officer. After Arnold completed his interview he, according to his own statements, got into a car, followed the vehicle the Davis twins were in and fired several shots at the car. Then, according to him, he turned around, went back and fired more shots. He told Derrick Kennedy he did this by himself.

Applying the shooting on July 1, 2014, to the law set forth above the following becomes clear:

1. There is no evidence that the alleged July 14, 2014, VICAR murder was enabled by the racketeering enterprise. First, there is no enterprise. Second, Arnold's actions were clearly not the result of his relationship with any enterprise nor was his activity related to the activities of the enterprise. The shooting on July 14, 2014, was a revenge shooting by a person who several witnesses described at various points as being out of control, obsessed with revenge and nuts.

2. The government's evidence wholly fails to establish that Billy Arnold's general purpose in the July 14, 2014, shooting of Page and Davis was done to maintain and increase his position in the SMB. It fails to establish this necessary purpose because the evidence revealed that the shooting had nothing to do with maintaining or increasing his position in the

12

racketeering enterprise. It had to do with personal revenge. It is beyond a stretch to suggest that the shooting occurred because Billy Arnold was interested in maintaining a position in a group that consisted of several people he had known for years from his neighborhood, a group that had no structure, and a group that consisted of people who were each doing their own hustle. The same can be said of his wish to increase his position by shooting someone that he alone was interested in shooting.

    3. The lack of evidence establishing a connection between the shooting and the alleged enterprise necessitates the dismissal of Count Four against Corey Bailey. The same lack of connection between the act and the enterprise exists as to him. The evidence is devoid of how, if he was present at the scene of the Page shooting, he was there in order to maintain or increase his position in the enterprise.

### 3. COUNTS FIVE, ELEVEN, TWELVE AND THIRTY-TWO SHOULD BE DISMISSED FOR LACK OF PROOF OF THE EXISTENCE OF AN ENTERPRISE

Counts Five, Eleven, Twelve and Thirty-two all require the existence of an enterprise. For the reasons stated above in the argument to dismiss Count One, the Court should dismiss these counts.

### 4. THE GOVERNMENT HAS FAILED TO PROVE THAT THE ALLEGED RACKETEERING ENTERPRISE HAD A SUBSTANTIAL AFFECT ON COMMERCE.

The focus of the RICO statute is on the economic functions of the racketeering

enterprise. *Waucaush v. United States,* 380 F3d 251, 255 (6th Cir 2004).[3] Given the unique concerns raised by noneconomic enterprises, *Waucaush* held that federal prosecutors needed to demonstrate a substantial, rather than a *de minimis*, effect on interstate commerce. *Id* at 255-256. None of the purposes alleged here are economic. Use of intimidation or violence by the alleged racketeering enterprise is no different than in *Waucaush* where the indictment alleged that "to protect their turf, Waucaush and his colleagues murdered, conspired to murder, and during less successful outings, assaulted, with intent to murder, members of two rival gangs that sought to expand their operations in Detroit." *Id* at 253. As Judge Edmunds concluded in dismissing the indictment charging RICO and VICAR offenses by street gang members in *Waucaush*, economics are the lynchpin of Commerce Clause jurisprudence. *United States v. Garcia,* 143 F Supp 2d 791, 812 (ED Mich 2000)(Edmunds, N.). The court in *Garcia* rejected the alleged use of guns manufactured in other states, traveling out of state, and combating gangs encroaching from other states as reasons to apply a *de minimis* test.

---

[3] See D'Angelo, *Turf Wars: Street Gangs and the Outer Limits of RICO's "Affecting Commece" Requirement*, 76 Fordham Law Review, Issue 4, Article 4, p. 2075, 2076 (2008), for a discussion of the history of RICO and the Commerce Clause requirement.

## CONCLUSION

For the reasons stated herein, defendant Corey Bailey should be granted an acquittal on all of the counts alleged against him in the indictment.

Respectfully submitted,

s/ Keith Speilfogel
**KEITH A. SPIELFOGEL (Bar No. 2689537)**
Co-Counsel for Corey Bailey (D-4)
190 S. LaSalle St., Suite 520
Chicago, Illinois 60603
Phone: (312) 236-6021
spielfogel@sbcglobal.net

s/ Craig Daly
**CRAIG A. DALY, P.C. (P27539)**
Attorney for Corey Bailey (D-4)
615 Griswold, Suite 820
Detroit, Michigan 48226
Phone: (313) 963-1455
4bestdefense@sbcglobal.net